19 F.3d 1433
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ahmad A.M. HALIM, Plaintiff-Appellant,
v.
UNITED STATES AIR FORCE, Secretary, Defendant-Appellee.
 No. 92-3773.
 United States Court of Appeals, Sixth Circuit.
 March 16, 1994.
 
 Before: MERRITT, Chief Judge, NELSON and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff, a Moslem of Egyptian birth, held a teaching position at the Air Force Institute of Technology. The Institute denied him tenure. Claiming that he had been discriminated against on the basis of his national origin and religion, the plaintiff brought suit under 42 U.S.C. Sec. 2000e-16. After a trial to the bench, the district court (Rice, J.) entered judgment for the defendant. We shall affirm the court's judgment, which is amply supported by detailed findings of fact and a well-reasoned opinion.
 
 I.
 
 2
 The plaintiff, Dr. Ahmad Halim, is an aerospace engineer who specializes in computational fluid dynamics. Dr. Peter J. Torvik, of the Air Force Institute of Technology, hired Dr. Halim to teach there. The Institute is a fully-accredited, graduate-level school operated by the U.S. Air Force; its students are mainly active-duty Air Force officers. Dr. Halim's formal appointment became effective in October of 1985, coincident with his becoming a naturalized citizen of this country.
 
 
 3
 Dr. Halim initially received a "Schedule B" appointment to a three-year term as an assistant professor of aerospace engineering. At the time of the appointment, a new faculty member did not start out with tenure. If the employee performed well during the initial three-year period, his supervisor could approve a change to permanent career status.
 
 
 4
 In April of 1987 members of the faculty were given an opportunity to switch to a pay plan referred to as "Schedule A," which provided pay scales that were more closely comparable to the pay scales at a civilian university. The new plan also changed the way in which tenure decisions were made, faculty members being required to submit applications for tenure and to undergo scrutiny by peer review committees. Faculty members not yet holding career status but appointed before the implementation of Schedule A were to be considered for tenure under the Schedule B procedures, however. Dr. Halim decided to convert to the new schedule.
 
 
 5
 During Dr. Halim's tour of duty, feedback on instructors was solicited from their students through evaluation forms. Some of Dr. Halim's students expressed dissatisfaction with his teaching and voiced the opinion that Dr. Halim was rude and sarcastic, impatient with questions, and unhelpful in clarifying matters which the students had difficulty understanding.
 
 
 6
 In August of 1987 Dr. Torvik wrote a memorandum stating that he had appointed an advisory committee to determine whether Dr. Halim should be recommended for tenure. The final tenure decision was to rest with Dr. Torvik, in keeping with the old (Schedule B) procedure. Dr. Torvik advised Dr. Halim that he was concerned about Halim's relationship with students, and Halim was told that he could submit outside recommendations as part of the review process. He elected to do so.
 
 
 7
 The three-member committee spoke with students and reviewed the evaluation forms. This committee expressed dissatisfaction with the plaintiff's teaching, and indicated that although they would give Dr. Halim time to improve, they would not grant tenure if they were required to make an immediate decision.
 
 
 8
 Dr. Torvik then advised Dr. Halim that he would not be recommended for tenure at the expiration of his appointment in October 1988. This decision was rescinded several days later by the dean of the school of engineering. Even though the tenure decision was to have been made under the Schedule B procedures, the dean concluded that because Dr. Halim had chosen to be paid under the new Schedule A, his tenure decision would be made under the Schedule A regulations as well. The dean advised Dr. Halim that the review "may result in a recommendation for permanent tenure, extension of your term appointment, or non-reappointment."
 
 
 9
 A review was conducted by the departmental Promotion and Tenure Committee, which included two members of the prior advisory committee and several others. The departmental committee unanimously decided not to recommend tenure. Unanimous concurrence was also obtained from the school-wide committee, the dean, and the commandant of the Institute. The plaintiff was notified of this decision in April of 1988, and his appointment was extended to a full year from that date to allow him time to search for employment elsewhere.
 
 
 10
 After complaining unsuccessfully to the Equal Employment Opportunity Commission, the plaintiff, proceeding pro se, filed a complaint in the United States District Court for the Southern District of Ohio. Dr. Halim later obtained counsel, but then dismissed the lawyer and proceeded pro se for the remainder of the litigation.
 
 
 11
 The district court found that the plaintiff had made out a prima facie case of discrimination, but that the defendant had articulated a legitimate reason for the denial of tenure--deficiencies in the plaintiff's teaching--and that this reason was not a pretext for unlawful discrimination. Despite plaintiff's complaint that he had experienced religious discrimination because he was assigned a class schedule that conflicted with religious obligations, the court found there was no direct evidence of discrimination, as the Institute accommodated his request to keep his Friday afternoon prayer hour open. Judgment was entered for the defendant. This appeal followed.
 
 II.
 
 12
 The district court entered findings of fact under Fed.R.Civ.P. 52. Such findings are not to be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). A finding of fact is clearly erroneous only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). When findings are based on credibility determinations, Rule 52 demands even greater deference. Anderson, 470 U.S. at 575.
 
 
 13
 The plaintiff takes issue with several of the district court's findings of fact. Our review does not show any of the contested findings to be clearly erroneous, however, and we adopt the district court's factual findings without change.
 
 
 14
 To establish a prima facie case of unlawful discrimination in employment, generally speaking, the plaintiff must demonstrate that he is a member of a protected class, that he applied for a job for which applicants were being sought, that he was qualified for the job, that he was rejected, and that the employer continued to seek applicants thereafter. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This standard is to be adjusted to accommodate various employment situations. Id. at 802 n. 13. If a defendant articulates a legitimate reason for the employment decision, the burden of going forward shifts back to the plaintiff and he must establish that the professed reason is only a pretext. Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248 (1981).
 
 
 15
 Dr. Halim argues that the district court failed to consider his claim of retaliation. The district court indicated that Dr. Halim had not met his burden of proving retaliation. We see no reason to set aside that conclusion. Dr. Halim suggests that Dr. Torvik retaliated against him for filing his EEO complaint by giving him a marginal rating at the next opportunity. Dr. Torvik's testimony, which the district court credited, was that the marginal rating was in fact a favor. Because Dr. Torvik had found Dr. Halim's teaching did not meet the necessary level, Halim would normally have been given a rating of unacceptable. Because a rating of unacceptable might have subjected Dr. Halim to an early discharge for cause, Dr. Torvik testified, Halim was given a higher rating than his teaching performance warranted. Moreover, the rating had no impact upon the tenure decision; that decision had already been made. Dr. Halim's contention that a rating of "successful" would have entitled him to automatic tenure is based on a misreading of the defendant's policies.
 
 
 16
 Dr. Halim also takes issue with the district court's conclusion that the defendant established a legitimate, nondiscriminatory reason for the denial of tenure. Tenure was denied because of deficiencies in the plaintiff's teaching and the negative student reaction to the plaintiff's actions in the classroom. The plaintiff argues that his research was excellent--a fact which is not disputed--and that an American-born teacher, Dr. Spenny, was granted tenure despite similar problems. The defendant countered, and the district court found, that Dr. Spenny's classroom deficiencies were related to a lack of confidence, as contrasted to Dr. Halim's rudeness and impatience, and that Dr. Spenny had sought assistance in bettering his performance. Dr. Halim, on the other hand, resisted suggestions for improvement in his teaching.
 
 
 17
 Dr. Halim points to favorable student evaluations contained in the record and says that these should have led to a grant of tenure. The district court noted properly that it could not sit as a "super tenure committee," however, and neither can this court. Dissatisfaction with the plaintiff's teaching skills would certainly have been a legitimate reason for the defendant's decision, and the Air Force did not have to be satisfied with Dr. Halim's mixed reviews. As the district court noted, it is not the function of the court to examine the correctness of the tenure decision. The court's function is simply to determine whether the decision was the result of unlawful discrimination. We have no basis for upsetting the determination made by the district court in this regard.
 
 
 18
 Dr. Halim also claims religious discrimination based on the defendant's alleged failure to accommodate his need for prayer time on Fridays. Dr. Halim alleged that he was scheduled to teach a class during his prayer hour, from 1 p.m. to 2 p.m. on Fridays. Although he makes much of minor inconsistencies in Dr. Torvik's testimony on this point, we accept the district court's characterization of this claim as "patently absurd." When Dr. Halim approached Dr. Torvik about the scheduling conflict, Dr. Torvik suggested Dr. Halim meet with the class and set another time for the class to be held. Dr. Halim did so, and no further complaints were made. Thereafter, Dr. Torvik made sure Dr. Halim's prayer hour was observed by directing that no classes be scheduled for him at that time. The accommodation thus made was eminently reasonable.
 
 
 19
 Finally, Dr. Halim contends that the district court treated him unfairly by conducting the trial during three separate sessions spaced over a period of months and by allegedly allowing the defendant to introduce unauthorized evidence. Dr. Halim was not treated unfairly; there is no merit to these contentions.
 
 
 20
 We can find no error that requires a reversal. The judgment is AFFIRMED.